IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| FAWNETTA MISENER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-20-357-RAW-SPS |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Fawnetta Misener requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security

---

[1] On July 9, 2021, Kilolo Kijakazi became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was forty-five years old at the time of the administrative hearing (Tr. 56). She had a ninth or tenth grade education and has previously worked as a driver (Tr. 40, 56, 234). The claimant alleges that she has been unable to work since her application date of November 3, 2017, due to severe anxiety, chronic pain, and auditory hallucinations (Tr. 233).

### Procedural History

On November 3, 2017, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her application was denied. ALJ Glenn A. Neel conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated March 11, 2020 (Tr. 28-42). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), except she could only occasionally climb ramps/stairs,

-3-

balance, stoop, kneel, crouch, and crawl; she could never climb ladders/ropes/scaffolds; and she must avoid concentrated exposure to hazards including no driving as a part of work. Additionally, he found she can perform simple tasks with one or two steps with routine supervision, can interact appropriately with coworkers and supervisors for incidental work purposes, and can adapt to a work setting and some forewarned changed in a usually stable work setting, but should avoid contact with the public (Tr. 32). The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *e. g.*, production assembler, power screwdriver operator, bottling line attendant, document preparer, addresser, and stuffer (Tr. 40-41).

## Review

The claimant's sole contention of error is that the ALJ failed to properly account for the consultative opinion of Dr. Theresa Horton, Ph.D. when he found it persuasive. The undersigned Magistrate Judge agrees with this contention, and the decision of the Commissioner should therefore be reversed and the case remanded for further proceedings.

The ALJ found that the claimant had the severe impairments of hypothyroidism, obesity, major depressive disorder, unspecified mood disorder with anxious and depressed features, unspecified anxiety disorder, unspecified personality disorder with cluster B dependent traits, and prominent dependent personality traits (Tr. 30). The relevant medical records as to the claimant's mental impairments reveals that she received some outpatient mental health treatment largely through Carl Albert Mental Health Center in 2018 and 2019. On March 7, 2018, the claimant was assessed with, *inter alia*, major depression,

recurrent, severe with psychotic features, as well as dysthymia and panic disorder with agoraphobia (Tr. 366).  Treatment notes reflect the claimant attended some appointments but missed a number of them as well, causing her to run out of medications (Tr. 382, 384-385, 409, 468, 463).  She did report some progress with medications, but that her anxiety and fearfulness still persisted (Tr. 386).  In June 2019, she reported continued depression, along with crying spells (Tr. 410).  In August 2019, she reported feeling more depressed (Tr. 423).  Throughout 2019, the claimant was largely, though not entirely, compliant with her medication and continued to miss appointments occasionally (Tr. 432-490).

Dr. Theresa Horton evaluated the client on three separate occasions for consultative examinations.  On February 14, 2011, Dr. Horton assessed the claimant with major depressive disorder, recurrent, moderate to severe, as well as anxiety disorder NOS (Tr. 330).  On that day, she indicated that the claimant appeared capable of understanding, remembering, and managing most simple and complex instructions and tasks, as well as having adequate social and emotional adjustment into most settings (Tr. 331).  Dr. Horton recommended therapy and medication management (Tr. 331).  Dr. Horton next assessed the claimant on January 17, 2017 (Tr. 334-337).  At that time, she assessed the claimant with major depressive disorder, recurrent, moderate, as well as unspecified anxiety disorder and prominent dependent traits (Tr. 336).  In the prognosis, she stated that the claimant appeared capable of understanding, remembering, and managing most simple and somewhat more complex instructions and tasks, though she likely would not adjust well in areas that are fast paced and/or densely populated (Tr. 337).  Dr. Horton again recommended medication and therapy but noted that the claimant appeared to have

presented with many dependent-type behaviors over the years which have been reinforced, and that she may be resistant to change (Tr. 337).

On February 6, 2018, the claimant presented to Dr. Horton for a third time (Tr. 359-362). At this examination, Dr. Horton noted that the claimant's attitude was avoidant although her cooperation was appropriate despite being "rather dramatic in her presentation and efforts to show she is 'paranoid,' often looking around the room" (Tr. 361). She appeared socially appropriate but uncomfortable, and her mood was anxious and depressed (Tr. 361). At this appointment, Dr. Horton assessed the claimant with unspecified mood disorder, with anxious and depressed features, and unspecified personality disorder, with cluster B/dependent features (Tr. 361). Under "Prognosis," Dr. Horton stated that the claimant appeared capable of understanding, remembering and managing most simple and somewhat more complex instructions and tasks (which was consistent with her employment history), but that she would not adjust well in areas that are fast paced and/or densely populated (Tr. 362). Additionally, noting that the claimant had not worked in a number of years or followed through with mental health treatment, Dr. Horton stated that the claimant "appears to have deficits in motivation and initiative that may continue to preclude any marked changes, adjustment or pursuit of treatment or employment in the near future" (Tr. 362).

On January 27, 2017, the claimant presented to Dr. Chris Sudduth for a physical consultative examination, during which he noted the following, in addition to making findings related to the claimant's ability to sit, stand, walk, lift, and carry (Tr. 344-347). Upon exam, she was not in acute distress, but had some panting associated with heightened

anxiety, and she was anxious and tearful throughout the examination (Tr. 345-347).  He therefore stated that her mood was not appropriate, despite the fact she was oriented, her memory was normal, and her concentration was good (Tr. 347).  On June 30, 2018, Dr. Ken Abernathy, D.O., conducted another physical examination of the claimant.  He assessed her with anxiety, along with physical impairments (Tr. 351).

Dr. Cynthia Kampschaefer, Psy.D., initially determined upon reviewing the claimant's records that she could perform simple and some complex tasks, relate to supervisors and peers on a superficial work basis, and adapt to a work situation, but that she could not relate to the general public (Tr. 107).  Upon review, Dr. Jason Gunter, Ph.D., found that the claimant was able to perform simple tasks of one to two steps with routine supervision, was able to interact appropriately with coworkers and supervisors for incidental work purposes, and adapt to a work setting and some forewarned changes in a usually stable work setting, but that she should avoid contact with the public (Tr. 123).  Dr. Gunter noted Dr. Horton's assessment in his summary of the evidence but made no mention of her prognosis (Tr. 117-118, 362).

In his written opinion at step four, the ALJ summarized the claimant's testimony and the medical record.  In discussing the opinion evidence as to the claimant's mental impairments, the ALJ noted Dr. Abernathy's findings upon exam (Tr. 34-35).  He found the claimant's failure to take medications a sign that her subjective statements were inconsistent with the evidence rather than as a confirmation of her mental impairments and deficits in motivation (Tr. 35).  As to the opinion evidence, the ALJ noted Dr. Abernathy's assessment of anxiety but that he did not state an opinion as to any limitations (Tr. 37).

-7-

Additionally, the ALJ found that Dr. Kampschaefer's opinion was generally consistent with Dr. Gunter's, though they were stated differently (Tr. 37). He found both opinions persuasive, as they were supported by objective findings related to tense posture, sad and tearful affect, and depressed mood, and that they were consistent with the claimant's statements that she was afraid to leave the house and had panic attacks (Tr. 37-38). He found, however, that Dr. Kampschaefer's opinion was not persuasive as to any finding regarding complex work (Tr. 38). The ALJ then addressed all three of Dr. Horton's opinions, summarizing some of her findings from each (Tr. 38-39). The ALJ found Dr. Horton's 2011 statement persuasive that the claimant could understand, remember, and manage simple instructions and tasks (Tr. 38). As to her 2017 opinion, he noted she found the claimant could understand, remember, and manage most simple and somewhat more complex instructions and tasks, and would not likely adjust well in areas that were fast-paced and/or densely populated (Tr. 39). He found this persuasive and supported by the findings from the 2017 exam but stated that her opinion would not support further limitations because her thought processes were logical, organized, and goal directed, her memory was intact, and her concentration was adequate (Tr. 39). He also found Dr. Horton's opinion consistent with the claimant's own statements and found that the claimant's failure to be compliant with medications or seek treatment would not support a finding she was more limited (Tr. 39). Finally, as to Dr. Horton's 2018 opinion, the ALJ stated, "Dr. Horton said that the claimant could understand, remember and manage most simple and somewhat complex instructions and tasks [and] would likely not adjust well in areas that are fast-paced and/or densely populated and appeared to have a deficit in

motivation" (Tr. 39). He found this opinion consistent with her 2017 opinion, supported by objective findings, and consistent with observations made during the exam (Tr. 39). He then concluded that the above RFC was supported by the record, then determined that the claimant was not disabled (Tr. 40-42).

The claimant contends that the ALJ failed to properly recite, and more importantly, address the full prognosis Dr. Horton provided in her 2018 evaluation. For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c(a), 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id*. However, when the ALJ finds that two or more medical opinions or prior

administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). In this case, the ALJ summarized Dr. Horton's various opinions, and even found them supported and consistent. But, as discussed below, while he mentioned those words in his opinion, he failed to provide a substantive connection between the prognoses from Dr. Horton and the RFC, despite finding them persuasive.

The regulations discussed above require the ALJ to explain how persuasive he found the medical opinions he considered, and as part of that explanation, also require him to specifically discuss the supportability and consistency factors. *See* 20 C.F.R. §§ 416.920c(b), 416.920c(c). The supportability factor examines how well a medical source supported their own opinion with "objective medical evidence" and "supporting explanations." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Likewise, the consistency factor calls for a comparison between the medical opinion and "the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). Here, the ALJ asserted that Dr. Horton's opinions were supported and consistent. The claimant contends, however, and the undersigned Magistrate Judge agrees, that that ALJ failed to connect Dr. Horton's *persuasive* opinion with the RFC. Indeed, while appearing to agree with Dr. Horton's opinion, it seems that he actually simply chose to adopt Dr. Gunter's assessment without explaining why or addressing the remaining factors in 20 C.F.R. § 416.920c(c). *See, e. g., Hardman v. Barnhart*, 362 F.3d 676, 681

(10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."). *See also Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'") [citation omitted]. *See also Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence that he rejects.") [citation omitted].

Specifically, the portion of the RFC presumably related to the claimant's mental impairments states that the claimant can perform simple tasks with one or two steps with routine supervision, can interact appropriately with coworkers and supervisors for incidental work purposes, and can adapt to a work setting and some forewarned changed in a usually stable work setting, but should avoid contact with the public (Tr. 32). As relevant here, Dr. Horton's persuasive opinion indicated that the claimant (i) "would not adjust well in areas that are fast paced and/or densely populated," and (ii) that she has "deficits in motivation and initiative that may continue to preclude any marked changes, adjustment or pursuit of treatment or employment in the near future" (Tr. 362). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "[I]t is incumbent on the ALJ to comply with SSR 96-8p by providing

a narrative explanation for his RFC finding that plaintiff can perform [the] work, citing to specific medical facts and/or nonmedical evidence in support of his RFC findings." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *5 (D. Kan. Sept. 11, 2013). Here, the ALJ acknowledged the first limitation and truncated the second to "deficits in motivation" but fails to explain how either of these is accounted for in the RFC despite finding her assessment persuasive, consistent, and supported by the record. The Court must be able to follow the logic, and here it cannot. *See Id.*, 2013 WL 4849101, at *2 ("When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination.") (*citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003)).

Because the ALJ failed to properly evaluate the medical opinion evidence, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis. On remand, the ALJ is instructed to consider *all* of the evidence in the record, both physical and mental, in assessing the claimant's RFC. If such analysis results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the

case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

    **DATED** this 7th day of March, 2022.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**